UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEON SHIPMAN,

            Petitioner,

v.                                                  Case No. 3:06-cv-115-J-32MCR

WALTER A. MCNEIL,[1]
et al.,

            Respondents.

_____

**<u>ORDER</u>**[2]

**<u>I. Status</u>**

Petitioner Leon Shipman, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on February 6, 2006.  Thereafter, Petitioner filed an Amended Petition for Writ of Habeas Corpus (hereinafter Amended Petition) (Doc. #5).

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James R. McDonough as the proper party Respondent having custody over Petitioner.

[2] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

Petitioner challenges a 2000 state court (Columbia County, Florida) judgment of conviction for sale of cocaine and trafficking in cocaine on one ground: the State of Florida reneged on a plea agreement that was initially illegal.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (hereinafter Response) (Doc. #15) with exhibits in support of their Response.[3]  Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #8). Petitioner has properly replied.  See Petitioner's Traverse to Respondents' Response to Petition for Writ of Habeas Corpus (hereinafter Reply) (Doc. #17).  This case is now ripe for review.

## II. Procedural History

On July 28, 1999, Petitioner was charged, by Information in Case No. 99-813-CF, with sale of cocaine and trafficking in cocaine for offenses committed on July 6, 1999.[4]  Ex. A at 1-6.  Petitioner entered a guilty plea and was sentenced on January 27, 2000, to fifteen years for the sale of cocaine and thirty years for the trafficking in cocaine, to run consecutively to each other for an overall term of forty-five years.  Id. at 43-52; Ex. B, Transcript

---

[3] Respondents' exhibits will be hereinafter referred to as "Ex."

[4] On October 21, 1999, Petitioner was charged, by Information in Case No. 99-1178-CF, with two counts of sale of cocaine for offenses committed on June 11, 1999, and July 1, 1999.  Ex. A at 125-32.

2

of the Sentencing Hearing (hereinafter Sentencing Tr.) at 70-71. At the sentencing hearing, the parties addressed the following issues: whether the sentencing proceedings should be closed to the public, whether Petitioner qualified as a habitual felony offender and whether Petitioner had provided law enforcement with substantial assistance. See Sentencing Tr.

On appeal, Petitioner Shipman, through counsel, filed an Initial Brief of Appellant, in which he raised one claim: the trial court erred in imposing the sentence because the Criminal Punishment Code violates the federal and Florida constitutional guarantees regarding due process of law, separation of powers, equal protection and cruel and unusual punishment. Ex. C. The State of Florida filed an Answer Brief. Ex. D. On May 9, 2001, the appellate court per curiam affirmed without issuing a written opinion. Ex. E. On August 21, 2001, the appellate court withdrew the May 9, 2001, opinion and issued a revised opinion, which per curiam affirmed, citing Harvey v. State, 786 So.2d 28 (Fla. 1st DCA 2001) and Hall v. State, 773 So.2d 99 (Fla. 1st DCA 2000). Shipman v. State, 791 So.2d 592 (Fla. 1st DCA 2001); Ex. F. The mandate was issued on September 14, 2001. Ex. G.

On or about September 14, 2001, Petitioner sought discretionary review in the Florida Supreme Court. Ex. H. On or about March 26, 2002, a stay was granted pending the disposition of other cases pending in the Florida Supreme Court which had raised

3

similar issues. <u>Id</u>. On July 29, 2004, the Florida Supreme Court declined to accept jurisdiction in Petitioner's case. <u>Shipman v. State</u>, 881 So.2d 1114 (Fla. 2004); Ex. H.

On or about April 6, 2005, Petitioner filed a *pro se* Motion to Correct Sentence, in which he claimed that his consecutive sentences for sale of cocaine and trafficking in cocaine violated double jeopardy. Ex. I. On May 4, 2005, the court denied the motion, stating in pertinent part:

> The Defendant claims that his sentence is illegal and should be overturned based on a violation of double jeopardy. The Defendant asserts that he cannot be convicted of both Sale of Cocaine and Trafficking in Cocaine when both charges arise out of the same criminal episode. The Defendant is incorrect in his assertion. While it is correct that there cannot be convictions for both Trafficking in Cocaine and Possession of Cocaine with Intent to Sell arising from the same criminal episode, <u>Washington v. State</u>, 745 So.2d 1050 (Fla. 1st DCA 1999), the same restriction does not apply for both Sale of Cocaine and Trafficking in Cocaine. The Defendant was charged with, and pled to, selling $50.00 worth of cocaine to an undercover officer. Additionally, the Defendant also was charged with, and pled to, Trafficking of Cocaine, for having more than 28 grams of cocaine in his possession. As there are different elements in the two charges, sale as opposed to possession, the Defendant's convictions do not violate double jeopardy.

Ex. J.

On September 15, 2005, the appellate court per curiam affirmed without issuing a written opinion. <u>Shipman v. State</u>, 911 So.2d

4

1238 (Fla. 1st DCA 2005); Ex. K.  The mandate was issued on October 12, 2005.  Ex. L.  The State did not make an appearance and did not file a brief.

On or about June 10, 2005, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he claimed that the prosecutor failed to fulfill his promise of a lesser sentence after the Petitioner provided substantial assistance to the State in exchange for a lesser sentence.  Ex. M at 6.  Petitioner explained that he had entered "an open plea" in October of 1999 to sale of cocaine and trafficking in cocaine and thereafter on January 27, 2000, was sentenced to thirty years for the trafficking in cocaine and fifteen years for the sale of cocaine, to run consecutively to each other.  Id. at 2.  He stated that, while he was out on bail, the State negotiated with the defense and offered him "an open plea" with the stipulation that a lesser sentence would be recommended by the State in exchange for substantial assistance and cooperation with law enforcement and that Petitioner agreed to the State's offer.  Id. at 3, 6.

Petitioner claimed that he provided substantial assistance as follows:  (1) he allowed law enforcement to set up equipment in his mother's home for the purpose of selling cocaine to street dealers who were unaware that they were being recorded and videotaped and (2) three sales were made under controlled circumstances by the same person.  Id. at 3-4.  However, Petitioner noted that, as he

was expanding his substantial assistance, law enforcement arrested the individual who had bought the cocaine from him under the controlled circumstances, and his undercover activities were exposed. Id. at 4. Thus, he alleged that his family members, mother and fiancee were subjected to threats and violence from associates of the individual who had been arrested due to Petitioner's covert operations, and thereafter hindered any further undercover activities by Petitioner. Id. He concluded that the State should be required to enforce the agreement since he gave substantial assistance resulting in one arrest, but that "complications" prevented him from doing more to assist law enforcement. Id. at 6-8.

On July 27, 2005, the court denied the motion, stating in pertinent part:

> This motion is untimely in that it was filed more than two (2) years after the sentence became final upon the issuance of a Mandate from the First District Court of Appeal on August 21, 2001, and does not contain claims that involve new facts that could not have been discovered by the exercise of due diligence.
>
> Even if the motion were timely filed, it does not present a reason enumerated in F.R.Crim.P 3.850 as a basis for a claim. Rather, the motion as presented is really a Rule 3.800(c) motion to amend or mitigate the sentence. The time limit for filing a Rule 3.800(c) motion is sixty days from the date of sentencing, and as such, this Court does not have jurisdiction to amend or mitigate the sentence.

Ex. N (capitalization omitted).

Petitioner appealed and filed an Initial Brief, raising two issues: (1) the trial court erred in denying his motion as untimely, and (2) the trial court failed to attach portions of the record that conclusively refute the allegations raised in the Rule 3.850 motion. Ex. O. The State filed a Notice that it would not file an Answer Brief. Ex. P. On November 29, 2005, the appellate court per curiam affirmed without issuing a written opinion. Shipman v. State, 917 So.2d 867 (Fla. 1st DCA 2005); Ex. Q. The mandate was issued on January 23, 2006. Ex. R.

Petitioner's Petition was provided to the prison officials at Madison Correctional Institution for mailing to the Court on February 3, 2006, and as a result thereof, the Petition was filed on February 6, 2006.[5] Thus, the Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 6.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

---

[5] Giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to the prison authorities for mailing to this Court (February 3, 2006). See Houston v. Lack, 487 U.S. 266, 276 (1988).

Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted.

### IV. Findings of Fact and Conclusions of Law

Petitioner claims that the State of Florida reneged on a plea agreement that was initially illegal.  Amended Petition at 6. Specifically, Petitioner states that "[p]lea negotiations resulted in Petitioner['s] agreeing to enter an open plea to the offenses in exchange that the State upon sentencing would recommend a lesser sentence with the condition that Petitioner give the State substantial assistance . . . ."  Id. at 6-6A.  Specifically, he alleges:

> Petitioner in plea negotiations agreed to cooperate with law enforcement and allow installment in his mother[']s home electronic equipment that records transactions made

>    between Petitioner and suspects, which is called "controlled buys."
>
>    As a result, there was [sic] at least three buys made by the same suspect. He was arrested, charged and was convicted. However, somehow Petitioner[']s identity became known, and Petitioner, along with family members including [his] mother began to receive threats of bodily harm.
>
>    The danger to himself and family limited Petitioner[']s being able to aid and assist in the apprehension of offenders. A conflict appears to have arose between Petitioner and the Supervisor of the controlled buys due to Petitioner[']s lack of number of buys. This was confirmed through testimony by [the] Detective in charge at [the] hearing where the media was allowed access to confidential information. Only the names of confidential informants were not available. Those were informants who allegedly gave the Detective information that Petitioner was selling drugs, but not under controlled circumstances. Making it appear that Petitioner violates his terms agreed upon between him and the prosecutor[']s of [sic] office.
>
>    The State recommended that the court sentence Petitioner to fifty years F.S.P. as a habitual felony offender.
>
>    Petitioner contends that even though the agreement made with the State was illegal from the beginning, the State reneged on their promise to give Petitioner a lesser sentence.

Id. at 6A-6B.

Respondents state, and this Court agrees, that Petitioner sufficiently exhausted this claim by raising it in his Rule 3.850 motion. Response at 7. While Respondents contend that Petitioner has failed to raise a claim of federal constitutional dimension

(see Response at 7, 11), Petitioner clarifies that his claim in this Court is one of federal constitutional dimension. Reply at 2. However, in state court, Petitioner presented the claim as a state law issue.

Even assuming that Petitioner has sufficiently exhausted and has raised a claim of federal constitutional dimension, the claim is without merit. As previously noted, the state court, in denying the Rule 3.850 motion, did not rule on the merits of the claim. However, the testimony in the record reflects that Petitioner did not provide substantial assistance to law enforcement. See Sentencing Tr.

The following facts are relevant for resolution of the claim. The record clearly reflects that Petitioner's plea was open-ended and there was no agreement regarding the State's sentence recommendation to the sentencing judge. Id. at 34-35, 67-69. At the sentencing hearing, the judge noted that the plea form had been sealed in the court file and clarified that the prosecutor did not negotiate or agree to a particular sentence. Id. at 35.

In 1999, Petitioner was charged with sale of cocaine and trafficking in cocaine under Fla. Stat. § 893.135. That statute contains a provision, which states:

> The state attorney may move the sentencing court to reduce or suspend the sentence of any person who is convicted of a violation of this section and who provides substantial assistance in the identification, arrest, or conviction of any of that person's

10

> accomplices, accessories, coconspirators, or principals or of any other person engaged in trafficking in controlled substances. The arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any such motion. Upon good cause shown, the motion may be filed and heard in camera. The judge hearing the motion may reduce or suspend the sentence if the judge finds that the defendant rendered such substantial assistance.

Fla. Stat. § 893. 135(4).

At the sentencing hearing, the state court judge heard testimony concerning Petitioner's assisting law enforcement. Petitioner claimed that he provided substantial assistance to law enforcement. Sentencing Tr. at 17, 18-19, 44-52. Specifically, he testified that his assistance resulted in one arrest. Id. at 19. He explained that he was not able to provide additional assistance to law enforcement because it became known in his community that he was working with law enforcement, which became a danger to him and his family. Id. at 48-50. He concluded that he tried to do more for law enforcement, but "no one trusts [him]" and no one "want[s] to communicate with [him] since they had heard he was working with law enforcement." Id. at 50.

Officer Sean Morrison, who was involved in the case, also testified that Petitioner's assistance resulted in only one arrest. Id. at 20-22, 54. He explained:

> Your Honor, during the time we were running the investigation with Mr. Shipman, this is a man who always had crack cocaine. We could call up and order as much as $100 and

11

>    he wouldn't blink an eye. When we arrested him, he had close to two ounces of crack cocaine on his person at the time of the arrest. I have worked with informants that have their name in the paper when they get out and they can usually do something.
>
>    Mr. Shipman and I sat down and spoke and interviewed and talked about people he had been doing business with and cultivated a list. Out of that list, it would have been believable for him not to have [been] able to do business with three, maybe even four of the seven or eight names that we had. Out of those names, he did absolutely nobody on the list. The person that he did assist us with, he told Sharon Russell, also on the task force, that the only reason he was doing this individual was because I told him that he had to do someone.
>
>    One time when we were sending Mr. Shipman to speak with a young lady involved in bringing crack cocaine back from Jamaica, we had given him specific orders on where to go and what he was supposed to do. During this time, somewhere between the meeting spot and the house he was supposed to go to to speak with the lady, he got into a vehicle and slipped surveillance for close to 40 minutes. We had no idea where he was at until we finally picked him up by triangulating the device.

Id. at 58-59. Further, Officer Morrison testified that Petitioner was conducting his own "uncontrolled buys." Id. at 55-58.

Petitioner concedes that "complications" arose, which forced him to terminate his assisting law enforcement. Ex. M at 6. He explains that the danger to himself and his family "limited" his being able to aid and assist in the apprehension of offenders. Amended Petition at 6A. He notes that people in the community

distrusted him, threatened him and clearly did not want to communicate or deal with him. Sentencing Tr. at 48-50. Thus, the record supports the conclusion that Petitioner was unable to give substantial assistance to law enforcement.

Further, contrary to Petitioner's assertion that the State recommended a fifty-year sentence as a habitual felony offender (Amended Petition at 6A-6B), the State did not recommend a habitual felony offender sentence. Specifically, the prosecutor stated:

> Briefly, Your Honor, he qualifies as a habitual felony offender under the trafficking count that is before the Court. He could be sentenced to life imprisonment. Based on everything, including the case cited and although I think the case law stands otherwise, I don't want to find out in 30 days that we have to resentence the defendant, so I am not asking for habitualization. I think the guidelines provide for severe enough punishment.
>
> In a brief closed hearing, you heard the pros and what Mr. Shipman actually did in furtherance of his agreement, and you also heard what he did that was not in furtherance of his agreement. I am taking that in consideration. I have spoken with the task force. The defendant scores up to 75 years in prison. The state is asking that he be incarcerated in [the] state Department of Corrections for 50 years with no probation to follow. . . .
>
> Mr. Shipman has continued -- and I count 13 prior felony drug convictions, although some of them may have been the same case number involving cocaine. That has been since 1989. He had an 11-year track record of continuing and getting probation and been sent to prison and it has not changed his behavior. Given the chance to -- he did say that was

13

>           part of my agreement and things like that.
>           There was no agreement. I think the Court --
>           I do remember that from the plea. You
>           understand what the maximums are and there is
>           no agreement, and this is open-ended and it
>           was. And so those arguments -- to avoid those
>           arguments in the future, I will concede that I
>           won't ask for habitual felony offender
>           sanctions that he could get. He probably does
>           deserve a life sentence based on his record
>           and what he has and hasn't done, but I am
>           asking for 50 years and I feel that's a
>           comparable sentence for what he is facing
>           before the Court. It is a guideline sentence
>           and the law of Florida calls for it.

Sentencing Tr. at 67-69.

Thus, while Petitioner arguably qualified as a habitual felony offender and his scoresheet recommended up to seventy-five years of incarceration, the State, taking into consideration his assistance as well as his lack of assistance, only recommended a fifty-year guideline sentence. Contrary to Petitioner's assertion, the State recommended a lesser sentence to the sentencing court.[6] As the record reflects, Petitioner was facing a possible life sentence.

Defense counsel agreed that Petitioner "did not completely satisfy law enforcement in respect to doing everything that he

---

[6] Petitioner, in response to Respondents' contentions contained within the Response, now states that the prosecutor promised to reduce the degree of the crime charged, thereby resulting in a lesser sentence, in exchange for his substantial assistance. Reply at 2-3, 4. However, Petitioner did not present this particular argument in state court. Rather, he claimed, as he argues in the Amended Petition now before this Court, that the State would recommend to the sentencing court that he receive a lesser sentence in exchange for his substantial assistance. Ex. M, Rule 3.850 motion; Amended Petition at 6.

14

could do under their terms," but concluded there was "at least some substantial assistance to law enforcement," for which Petitioner should receive some credit. Id. at 69. Defense counsel concluded that Petitioner should receive "some reasonable consideration" for his substantial assistance. Id. at 70. Thus, even with the State's recommendation of fifty years of incarceration based on his lengthy prior criminal record and his limited assistance to law enforcement, the court sentenced Petitioner to a lesser term of (fifteen years for the sale of cocaine and thirty years for the trafficking in cocaine, to run consecutively to each other, for an overall term of forty-five years). Thus, based on the record, it appears that the trial judge, as well as the prosecutor, considered the assistance that Petitioner provided to law enforcement.

Finally, Petitioner claims that the agreement for him to provide substantial assistance was itself illegal. Amended Petition at 6B. Specifically, Petitioner contends that "state law does not provide provisions where a defendant in providing substantial assistance to law enforcement can agree to aid in the apprehension of offenders not related to his case." Id. at 6A. Quite to the contrary, section 893.135(4) allows for substantial assistance "in the identification, arrest, or conviction of any of that person's accomplices, accessories, coconspirators, or principals **or of any other person engaged in trafficking in controlled substances**." Fla. Stat. § 893.135(4) (emphasis added).

15

For all of the previously-stated reasons, the Amended Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. #5) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of December, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

sc 11/13
c:
Leon Shipman
Ass't Attorney General (Pate)